**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JERAE PALMER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 15-202 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| FEDERAL EXPRESS CORPORATION, | ) | |
| also known as FEDEX EXPRESS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

For the reasons that follow, Defendant's Motion for Summary Judgment (Doc. 39) will be granted.

Jerae Palmer ("Palmer" or "Plaintiff") brings this lawsuit against Federal Express Corporation ("FedEx" or "Defendant"), under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, *et seq.*, the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a,[1] and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. §§ 951-963, alleging discrimination because of sex, including termination and harassment, in violation of Title VII (Count I), (Doc. 1 at ¶¶ 15-33), and the PHRA[2] (Count III), (Doc. 1 at ¶ 49), and alleging failure to reasonably accommodate and

---

[1] Defendant mistakenly moves for summary judgment on a claim under § 1981, which relates to race discrimination, as opposed to 42 U.S.C. § 1981a, cited in the Complaint, which is part of the 1991 amendments to Title VII. Plaintiff makes clear in her brief in opposition that she does not pursue any § 1981 claim. (Doc. 50 at 14).
[2] Plaintiff does not assert in her Complaint a claim under the PHRA for disability discrimination.

retaliatory termination for requesting a reasonable accommodation in violation of the ADA. (Count II). (Doc. 1 at ¶¶ 34-47).

**BACKGROUND[3]**

Palmer worked as a courier at FedEx's AGCA station in the Three Rivers District from 2004 until her termination on March 31, 2011. (ASOF at ¶ 1).[4] At the beginning of her employment with FedEx, she signed an employment agreement, which provides: "To the extent the law allows an employee to bring legal action against FedEx Express, I agree to bring that complaint within the time prescribed by law or 6 months from the date of the event forming the basis of my lawsuit, whichever expires first." (ASOF at ¶ 2).

Plaintiff received review ratings on a seven point scale of 6.5 in 2007, 6.1 in 2008 and 5.6 in 2009, but did not receive any performance reviews after 2009. (PSOF at ¶ 43, 44).[5] Plaintiff did, however, receive praise in the form of an online compliment on July 22, 2010, stating that she "did [an] outstanding job with all of her BP methods. Jerae's pace was perfect. She was very professional and polite to all of her customers thanking them all for their business. Thank you Jerae for delivering the purple promise to all of your customers." (PSOF at ¶ 32; Doc. 50-2 at 3).

During her employment with FedEx, Palmer was out on workers' compensation leave on several separate occasions due to work related injuries: from February 15, 2007 though April 3,

---

[3] The factual background is derived from the undisputed evidence of record and the disputed evidence viewed in the light most favorable to the nonmoving party. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

[4] The Statement of Undisputed Material Facts admitted to by Plaintiff are referred to as "ASOF at ¶ ___".

[5] In response to Defendant's motion, Plaintiff filed her Concise Statement of Facts referred to as "PSOF at ¶ ___; (Doc. No. 48).

2007, due to frostbite (PSOF at ¶ 43); from January 28, 2009 through April 13, 2009, due to

frostbite (PSOF at ¶ 44); from May 3, 2010 through July 8, 2010, and from December 23, 2010

through March 3, 2011, due to a head injury  (PSOF at ¶ 45).

FedEx has a policy entitled "Acceptable Conduct Policy" (hereinafter "conduct policy").

(ASOF at ¶ 4; Doc. 41 Ex. A). The policy provides guidelines for conduct and identifies conduct

subject to serious disciplinary action, up to and including termination.  (ASOF at ¶ 4, 5); Doc. 41

Ex. A.  The conduct policy also prohibits the use of violent, threatening, intimidating, coercing

or abusive language or displaying blatant disrespect toward or about any employee.   (ASOF at

¶ 5).  Plaintiff read the policy to understand what was considered acceptable conduct.  (ASOF at

¶ 6).

FedEx also has a policy entitled "Performance Improvement Policy" (hereinafter

"performance policy").  (ASOF at ¶ 7).   Under the performance policy, employees may be given

documented counselings, performance reminders and warning letters. (Doc. 41 at 8, 9, 17, 19)**.**

FedEx refers to counseling notices as OLCCs.  (ASOF at ¶ 8).  As provided in the performance

policy, "[a] documented counseling/OLCC entry is not disciplinary in nature, but it may be

considered as a factor when determining whether discipline (i.e., Warning Letter, Performance

Reminder, termination, etc.) is warranted."  (Doc. 41, Ex. B at 117).

The performance policy further provides that:

> Termination normally results upon receipt of
>
> - Three unsatisfactory performance reviews, or
> - Three performance reminders, or
> - a combination of any type of notification (including warning
>   letters for misconduct) totaling three within a 12-month period.

***

> **Termination Option Not exercised.** If a manager chooses not to discharge an employee who has three notifications of deficiency, the manager must prepare a written explanation of the rationale and maintain it in a department/station file. An information copy must be sent to the matrix HR manager.

Id. at 120. Thus, according to the policy, although termination normally results it is not mandatory for three notifications.

FedEx also has a procedure entitled "Guaranteed Fair Treatment Procedure/Internal EEO Complaint Process." (Doc. 41, Ex. C); (ASOF at ¶ 9). The Guaranteed Fair Treatment Procedure ("GFTP") is the internal procedure used by FedEx to handle employee complaints regarding discipline and other issues, which include application of compensation and benefit policies, terminations, performance review and work assignments presumed to be either unsafe or for which training has not been provided. (ASOF at ¶ 10). A complaint made through GFTP must be submitted electronically within five calendar days of the challenged event or occurrence. (ASOF at ¶ 10). The procedure states: "All complaints will be promptly and thoroughly investigated as a confidential a manner as possible." (Doc. 41, Ex. C at 338); (ASOF at ¶ 11).

If an employee believed that they have been subjected to discrimination, they could file an Internal Equal Employment Opportunity ("IEEO") Complaint. (ASOF at ¶ 11). Anytime Plaintiff expressed a "complaint" or complained of discrimination she was provided the appropriate paperwork for pursuing a formal IEEO complaint. (ASOF at ¶ 12; PSOF at ¶ 48). For example, Plaintiff was provided the appropriate EEO paperwork on five separate occasions: March 2005, when she informed management that she "felt" intimidated by a discussion from a fellow employee; October 2005 when she notified management about the use of profanity by fellow employees; October 2005 when she felt that "Rad" in dispatch treated her differently than "other employees," presumably males; May 2007 when she felt discriminated against on the

distribution of hours; and August 2010 when she stated she felt she had a target on her back since her head injury. (PSOF at ¶ 33-37, 47, 48); Doc. 50-2 at 6. At no time did she pursue the formal EEO complaint process. (ASOF at ¶ 12.)

Between February 22, 2010, and her termination date of March 31, 2011, FedEx issued three warning letters to Plaintiff: February 22, 2010 for unprofessional messages and behavior directed at the dispatch department, (ASOF at ¶ 13); July 9, 2010 for unacceptable actions and communications with a Safety Specialist, (ASOF at ¶ 14); and finally, March 31, 2011 for her conduct on or about March 23, 2011, yelling at another employee, calling him a "nebsh*t" and telling him "mind your damn business." (ASOF at ¶ 16. The Court will address the specific conduct leading to the warning letters more fully in its analysis.

On March 31, 2011, FedEx issued the third warning to Plaintiff by inter-office memorandum from Operations Manager Brian Stashak and copied to Senior Manager Jean Peluso and Human Resources Manager Bernice Boyden. (Doc. 44-1 at 27; Doc. 49 at ¶ 21). The third warning letter indicated the following:

- Plaintiff violated the Acceptable Conduct Policy on March 23, 2011
- The March 31, 2011 Warning Letter represented the Plaintiff's third notifications of deficiency, citing to the prior two
- Under FedEx policy, a recurrent pattern of misconduct consists of at least two occurrences of the same or similar conduct in the past 5 years
- Under FedEx policy, recurrent patterns of misconduct cannot be tolerated and three notifications of deficiency within a twelve-month period normally results in termination
- Plaintiff's employment was being terminated effective immediately.

(Doc. 44-1 at 27).

Pursuant to FedEx's termination policy, termination decisions are made collectively by two levels of management and a human resources advisor. (ASOF at ¶ 20). Plaintiff does not dispute that she was terminated for receiving three disciplinary notices in a twelve month period.

(ASOF at ¶ 19).  It also is undisputed that numerous male employees in the Three Rivers District also had been terminated for receiving three disciplinary notices within a twelve month period. (ASOF at ¶ 22).

Plaintiff did not suffer any migraines from 2005, until she suffered a head injury in April of 2010.  (Doc. 49 at ¶ 24).  Plaintiff testified that she had approximately 20 migraines a month at one point when she was not working, but after she returned to work the last time in March of 2011 that she "was down to only a couple" of migraines a month or "maybe one a week."  (Doc. 38 at 9, 65-66).   Her migraines did not cause her to miss work or school and she was able to engage in normal daily activities, such as bike riding, walking, and shopping.  (Doc. 38 at 19, 66).

On September 28, 2011, Plaintiff went to the EEOC and filled out an intake questionnaire, and was directed to return on October 14, 2011**.**  (PSOF at ¶¶  29, 30).  Plaintiff's "official" Charge of Discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") on October 14, 2011, (ASOF at ¶ 26), wherein she lists the date of discrimination as November 20, 2010, at the earliest and March 31, 2011, at the latest (ASOF at ¶ 27; Doc. No. 44-2 at 39), but did not check the box indicate a continuing action.  (ASOF at ¶ 27; Doc. 44-2 at 39).  After receiving a right to sue letter, Plaintiff filed the instant action on February 15, 2015, almost four years after her termination.  (See Doc. 1); (ASOF at ¶ 3).

## SUMMARY JUDGMENT STANDARD

Plaintiff incorrectly indicates that for purposes of the present motion for summary judgment she "is entitled to the presumption that everything plead in the complaint is true and to every inference that may be drawn therefrom."  (Doc. 50 at 1).  Plaintiff conflates the motion to dismiss standard with the summary judgment standard.  Compare U.S. Express Lines Ltd. v.

Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (accepting as true all well-pled factual allegations in the complaint and viewing them in a light most favorable to the plaintiff), with Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (plaintiff cannot rest on mere allegations, but must come forward with evidence). On summary judgment, the court considers the evidentiary materials and factual record and is "required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007) (internal quotation marks and alterations omitted). See also Doe v. Cnty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001) (when applying this standard, the court must examine the factual record and make reasonable inferences therefrom in the light most favorable to the opposing party).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56). The moving party need not produce any evidence showing the absence of a genuine issue of material fact. Id. at 325. "Instead, … the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. After the moving party has satisfied this low burden, the nonmoving party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. Id. at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Id. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001); Garcia v. Kimmell, 381 F. App'x

211, 213 (3d Cir. 2010) (quoting <u>Podobnik v. U.S. Postal Serv.</u>, 409 F.3d 584, 594 (3d Cir. 2005) (the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.")).   Ultimately,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## **ANALYSIS**

Defendant makes a myriad of arguments as to why the Court should grant its motion for summary judgment.  Specifically, Defendant argues that (a) Palmer's claims are time-barred because the action was filed more than six months after the events forming the basis of the lawsuit, as required by her employment contract with Defendant; (b) all of her claims, except for those challenging the denial of accommodation based on her March 2011 request and her March 2011 termination are untimely under Title VII, the ADA and the PHRA; (c) she is not disabled and therefore not entitled to relief under the ADA; (d) she cannot show that she was treated less favorably than similarly situated male employees and thus cannot establish a *prima facie* case of sex discrimination; (e) she cannot show a causal connection between her request for reasonable accommodation and any adverse employment action; and (f) she cannot show that the legitimate non-discriminatory reasons proffered by Defendant for any adverse employment action were pretextual.  (Doc. 40 at 1, Doc. 52 at 4).  The Court will address each argument in turn.

Citing <u>Cole v. Federal Exp. Corp.</u>, Civ. Act. No. 06-3485, 2008 WL 4307090 (E.D. Pa. Sept. 19, 2008), FedEx argues that because Plaintiff did not file her complaint in federal court within six months of the challenged activity, her claims, other than for termination and failure to reasonably accommodate, are barred under the contractual limitations provision in her employment contract.  (Doc. 40 at 4).  Contractual limitations periods are not *per se*

8

unenforceable, however, as <u>Cole</u> observed "[i]t is important to note that many courts have found that a six-month contractual limitations period does not bar claims pursuant to federal statutes such as Title VII or the ADA." 2008 WL 4307090, at *9. <u>Cole</u> found the contractual limitations period enforceable as to pendant *state common law torts* but not as to the federal statutory discrimination claims requiring exhaustion of administrative remedies. Thus, <u>Cole</u> does not support Defendant's position, but rather the opposite.

Any individual plaintiff wishing to bring a suit under Title VII or the ADA must first receive a right to sue notice from the EEOC. 42 U.S.C. § 2000e (f)(1). The EEOC, upon the filing of a charge of discrimination or retaliation, initially has exclusive jurisdiction over the matter for one hundred and eighty (180) days. <u>Id.</u> Requiring suit in court within 6 months to comply with an Employer's limitations clause would interfere both with the statutory scheme mandating exhaustion of administrative remedies under Title VII, the ADA and the PHRA and would result in suits being filed prematurely in federal court, appropriately resulting in dismissal for failure to exhaust. <u>Shine v. Bayonne Bd. of Educ.</u>, 633 F. App'x 820, 824 (3d Cir. 2015) (affirming dismissal of Title VII claims for failure to exhaust). Thus, Plaintiff's claims under Title VII, the ADA and the PHRA are not time-barred under the contractual limitations clause.

Alternatively, FedEx argues that the applicable statute of limitations bars all but Plaintiff's claim for discriminatory termination and failure to reasonably accommodate. In a deferral state like Pennsylvania, to bring a claim under Title VII or the ADA, a plaintiff must file a charge with the EEOC within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e–5(e)(1).

Plaintiff responds by arguing that (1) although her charge was not filed until October 14, 2011, the Court should consider the date she submitted her hand written intake questionnaire to

the EEOC, September 28, 2011, as the relevant date, citing 29 C.F.R. § 1626.3, Holender v. Mutual Indus. North Inc., 527 F.3d 352, 355 (3d Cir. 2008) and Federal Express Corp. v. Holowecki, 552 U.S. 389 (2008), and (2) this case presents a continuing violation such that her challenge here is timely as to all claims. (Doc. 50 at 11-12).

Where the plaintiff's intake filing includes the information required by regulation and that filing also contains information reasonably construed as a request for the agency to take remedial action, the intake questionnaire will be considered a "charge" for purposes of determining timeliness. Holowecki, 552 U.S. at 1157-1158. Plaintiff's September 28, 2011 intake questionnaire arguably contains all of this required information. Moreover, FedEx does not appear to contest the use of a December 2, 2010 – 300 days prior to Plaintiff's intake filing – as the bar date. (Doc. 52 at 1).

Accordingly, using September 28, 2011 as the date Plaintiff filed a charge, any claim accruing prior to December 2, 2010 will be time barred, unless it is part of a continuing violation.

Plaintiff argues that her claims are not time-barred under the continuing violation theory, (Doc. 50 at 10), which "deems a claim timely if any act constituting part of the continuing violation took place within the statute of limitations." Henderson v. Borough of Baldwin, Civ. Act. No. 15-1011, 2016 WL 5106945, at *4 (W.D. Pa. 2016). Nevertheless, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). A discrete act in itself constitutes a separate actionable unlawful employment practice. Id. at 114; Mikula v. Allegheny County of PA, 583 F.3d 181, 186 n.3 ("As determined by Morgan, the doctrine does not apply to discrete, completed employment actions.").

> [T]he continuing-violation doctrine . . . is an equitable exception to the timely filing requirement. In brief, the rule provides that when a defendant's conduct is

part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred. The doctrine's focus is on affirmative acts of the defendant[].

The reach of this doctrine is understandably narrow. [It applies] where only in retrospect will a plaintiff recognize that seemingly unconnected incidents were, in fact, part and parcel of a larger discriminatory pattern.

Tearpock-Martini v. Borough of Shickshinny, 756 F.3d 232, 236 (3d Cir. 2014) (internal quotations and citations omitted).

The Court finds that to the extent Plaintiff challenges any alleged earlier denial of request for reasonable accommodation it is time barred, as is the challenge to overtime prior to December 2, 2010. Regarding her assertion of a hostile work environment, discussed *infra*, if conduct after December 2, 2010, can fairly be construed as part of a continuing practice, the claim for conduct prior to that date will not be time-barred. As FedEx concedes, the challenges to the March 2011 request for reasonable accommodation, to the March 2011 termination, and to the overtime assignment practices beginning in December 2010, are not time-barred.

**Sex Discrimination**

Title VII cases not involving direct evidence of discrimination are examined according to the burden-shifting framework first established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). This case does not involve any direct evidence of discrimination. Therefore, the familiar burden-shifting framework applies.

Plaintiff must first establish a *prima facie* case of discrimination.

Under this framework, to establish a prima facie case of discrimination, a plaintiff must show that "1) [she] is a member of a protected class, 2) [she] was qualified for the position [she] sought to attain or retain,[6] 3) [she] suffered an adverse

_____

[6] Defendant states in its motion that Plaintiff cannot establish that she was qualified for her job, but does not make any further argument to support its contention. The Court notes as well that

employment action, and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." Mandel, 706 F.3d at 169 (quoting Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir.2008)).

Jones v. Temple Univ., 622 F. App'x 131, 134 (3d Cir. 2015).

Proof of these basic facts raises an inference of discrimination, which is given the force and effect of a rebuttable presumption. Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). "The means by which a claimant most often satisfies the [final] element is by showing that she was treated less favorably than similarly situated employees who are not in the same protected class." Neidigh v. Select Specialty Hospital–McKeesport, 150 F. Supp. 3d 573, 577 (W.D. Pa. 2015), aff'd, No. 16-1013, 2016 WL 6996132 (3d Cir. Nov. 30, 2016); Pivirotto v Innovative Systems, Inc., 191 F.3d 344, 357 (3d Cir. 1999).

> "Although [the Court of Appeals] has not explicitly stated what constitutes a similarly situated employee, [it has accepted] the standard used by other circuits that to be considered similarly situated, comparator employees must be similarly situated in all relevant respects. Russell v. University of Toledo, 537 F.3d 596 (6th Cir.2008); Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259–261 (5th Cir.2009). A determination of whether employees are similarly situated takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in.

Wilcher v. Postmaster Gen., 441 F. App'x 879, 881–82 (3d Cir. 2011).

Once a plaintiff has made a *prima facie* case, the burden shifts to the defendant to *articulate* a legitimate non-discriminatory reason for the adverse action. Makky, 541 F.3d at 214; Jones, 622 F. App'x at 134. A plaintiff then has the burden to show pretext—that the legitimate non-discriminatory reason is a pretext for unlawful discrimination. Makky, 541 F.3d at 214.

---

Plaintiff was performing her job at the time of her termination. Accordingly, the Court will not entertain this assertion.

FedEx provides evidence of several male employees that were terminated because they received three notifications in a twelve month work period and two males that were terminated by FedEx for a *single* violation, one for a violation of the FedEx anti-harassment policy and one for violating the policy against "threatening, intimidating, coercing, or abusive language," for which Plaintiff also was cited. Plaintiff responds that these male employees are not appropriate comparators because their violations of the conduct policy were more egregious in nature than Plaintiff's. FedEx points to these asserted comparators to counter Plaintiff's assertions that her termination was based on sex discrimination. Plaintiff nowhere provides any evidence that similarly situated male employees were treated more favorably in termination decisions in order to raise the inference of discrimination. Instead, she simply argues against FedEx's proffered comparators. Ultimately, Plaintiff fails to show as part of her *prima facie* case that similarly situated male employees were treated more favorably and fails to show circumstances from which a reasonable jury could infer that her termination was based on sex.

Assuming Plaintiff could establish a *prima facie* case, because FedEx has articulated a legitimate non-discriminatory reason for its decision, Plaintiff must show pretext.

> In order to substantiate her assertion of pretext, Plaintiff must provide the Court with sufficient " 'evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.' " Michaels v. BJ's Wholesale Club, Inc., 604 Fed.Appx. 180, 182 (3d Cir.2015) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir.1994)). The evidence must allow a factfinder to infer that Defendant's nondiscriminatory basis for termination of Plaintiff "was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." Fuentes, 32 F.3d at 764. Moreover, Plaintiff must do more than demonstrate that Defendant's basis for her termination was incorrect or mistaken, "since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Id. at 765.

Neidigh v. Select Specialty Hospital–McKeesport, 150 F. Supp. 3d 573, 578–79 (W.D. Pa. 2015), aff'd, No. 16-1013, 2016 WL 6996132 (3d Cir. Nov. 30, 2016).

It is axiomatic that Palmer must do more here than show that FedEx's decision to terminate her was wrong or mistaken, because the issue is whether FedEx was motivated by discrimination not whether the decision was "wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765.

Plaintiff claims that FedEx's failure to properly investigate the circumstances giving rise to her three qualifying violations of the conduct policy evidenced discrimination based on gender. (Doc. 50 at 3). The February 2010 incident involved unprofessional conduct with her dispatcher McKay, with whom she did not get along, (PSOF at ¶ 60), and about whom she had complained to her manager. Plaintiff appears to argue that the dispatch transmissions underlying the incident should have been reviewed at the time the warning letter was issued to her. Plaintiff does not, however, dispute the incident. Moreover, her own notes do not contradict the transmissions. She asserts that she received a warning letter but McKay did not. McKay, however, received a performance reminder, which is the functional equivalent of a warning level under the three notifications in a twelve month period policy. (Doc. 41, Ex. B at 17-20). Plaintiff fails to demonstrate how the performance reminder, as opposed to a warning letter, shows discrimination or pretext. If she had been given a performance reminder, it still would have constituted a "notification" properly used to justify her eventual termination.

The second incident occurred on April 14, 2010, and resulted in a July 9, 2010 warning letter for inappropriate communications with the safety specialist and failure to operate her vehicle safely during training. Plaintiff claims this warning letter was discriminatory because (a) the investigation into the incident began after she suffered a work-related head injury and was out on workers' compensation, (b) there were conflicting witness statements regarding the

incident and (c) Manager Cooper only requested her statement regarding the incident when she returned to work on July 9, 2011, just before she was given the written warning. Plaintiff had little recall of the incident, and does not dispute it. (Doc. 50 at 5). That the investigation began a few weeks after the incident is not a sufficient lag in time to create an inference of discrimination. More importantly, the employer resolved any "conflicting" statements in Plaintiff's favor—not terminating her (or even citing her) for trying to run over the safety specialist and assisting employee.

As to the final incident, on March 23, 2011, Plaintiff claims that FedEx failed to interview a witness she had identified in her written statement. Plaintiff, however, admits that she in fact called her co-worker, Mike Loresky, a "nebsh*t" and told him "mind your damn business." (Doc. 38 at 49). Beyond the asserted failure to interview the witness, she does not explain how interviewing the witness would have changed the outcome of the investigation or, more importantly, how failure to interview the witness was discriminatory. The inquiry is not whether the employer was wise, shrewd or prudent. Simply put, nothing in the manner of investigating the three incidents raises an inference of discrimination based on sex nor does it demonstrate pretext.

Plaintiff also contends that her conduct did not rise to the level of "violent, threatening, intimidating or abusive language or blatant disrespect." (Doc. 49 at ¶ 22). This, again, misses the point. Plaintiff is simply unable to show how receiving a warning letter for abusive language or blatant disrespect where she admittedly called a fellow employee a "nebsh*t" and told him "mind your damn business" gives rise to an inference of discrimination or pretext. That she disputes the characterization of the underlying conduct is immaterial.

To avoid summary judgment, Plaintiff must show pretext, not just provide a laundry list

of employer actions with which she disagrees.

It is not the function of this court to determine whether defendants' business judgment in terminating plaintiff was correct. In <u>Watson v. Southeastern Pennsylvania Transportation Authority</u>, 207 F.3d 207 (3d Cir.2000), the Court of Appeals for the Third Circuit explained that an employer is permitted "to take an adverse employment action for a reason that is not 'true' in the sense that it is not objectively correct." <u>Id.</u> at 222. As an example, the court of appeals stated:
if an employer sincerely believes that an employee has stolen company funds and discharges the employee for this reason, the employer should not be held liable under the [employment discrimination statutes in question] just because it turns out that the employee did not steal the funds and that the employer's reason for the discharge was in this sense not "true." *Id.* The inquiry must focus upon "the perception of the decision maker." <u>Billet v. CIGNA Corp.</u>, 940 F.2d 812, 825 (3d Cir.1991). Defendants only needed an honest belief that the incidents occurred. <u>Watson</u>, 207 F.3d at 222.

<u>Prise v. Alderwoods Grp., Inc.</u>, 657 F. Supp. 2d 564, 596 (W.D. Pa. 2009).

Plaintiff argues that there is inconsistent discipline that gives rise to an inference of discrimination. (Doc. 50 at 9). In support she cites to a number of incidents where she believes male employees were not sufficiently disciplined or where she received discipline or unfair treatment where a male coworker did not. The Court will address each briefly and explain why it is an inadequate comparison.

- Plaintiff claims courier Mark Bishop yelled at her and threw an 88 lb. package at her (PSOF at ¶ 57). However, Plaintiff cannot point to any evidence in the record that shows that the package was thrown at her or her vehicle or that she had reported same. The evidence merely supports that Bishop tossed packages on the curb as Plaintiff drove around and that she had reported that Bishop was not very nice.

- Plaintiff claims she heard Peluso respond to employee swearing with a mere verbal warning whereas in 2005 a manager gave Plaintiff an OLCC when it was alleged that she used profanity with a fellow employee. Yet, Plaintiff fails to show, or even allege, sex was the basis for the disparate treatment. Plaintiff also does not account for the fact that two different decision makers were involved in these incidents.

- Plaintiff complained about employees smoking too close to the building or in the trucks and felt those complaints went unanswered. Again, Plaintiff fails to show how this is remotely connected to her sex.

Plaintiff also complains about several other minor workplace events, none of which support an inference of discrimination:

- Plaintiff complains Peluso did not ask her why her eyes were swollen after Plaintiff finished a shift, even though Defendant's Performance Improvement policy that states that before remedial action, the manager should consult with the employee to determine if any recent traumatic events had occurred. (PSOF at ¶ 81). Peluso's response may have been perceived by Plaintiff as inconsiderate, but that is insufficient.

- Plaintiff asserts, without record evidence, that a male afternoon driver had a truck assigned to him but she did not. (Doc. 50 at 15). Not only is Plaintiff's assertion not supported by any evidence in the record, Plaintiff does not even explain any of the circumstances as to why the male driver was assigned a dedicated truck. Moreover, her own EEOC intake questionnaire asserts that a female driver was given an assigned truck due to asthma. (Doc. 44-2 at 41).

- Plaintiff contends that, in August 2010, she reported to management that "she felt as if she had a target on her back since her work related head injury" and that senior manager Peluso and Plaintiff's assigned manager at the time did nothing more than give her an "EEO packet."[7] (Doc. 50 at 8). Her "perception" that she had a target on her back is not "evidence" to show discrimination based on sex, as pretext or otherwise, particularly because Plaintiff explained that her perception was due to her workers' compensation injury, not due to her sex. (Doc. 50-2 at 26). Even so, that management provided her with appropriate EEO paperwork to file a formal complaint, which she again chose not to pursue, does not tend to show any discrimination on the part of FedEx. The Court agrees with Plaintiff that Defendant's voluntary EEO process does not shield it from liability here. (Doc. 50 at 8). However, that Plaintiff chose not to provide evidence or further documentation or explanation regarding her amorphous claims, cannot create liability.

In addition to discriminatory termination, Plaintiff claims discrimination in the assignment of overtime hours. A loss in overtime constitutes an adverse action under Title VII as it affects an employee's "compensation, terms, conditions or privileges of employment." 42

---

[7] Plaintiff also points to numerous other occasions she was given an "EEO packet" when she voiced various complaints. She seemingly cries foul because FedEx did nothing further than giving her an EEO packet in various circumstances, however, she admittedly never filled out an EEO packet and submitted it to FedEx. The giving of a voluntary EEO packet or the failure to give a voluntary EEO packet does not evidence unlawful discrimination or pretext.

U.S.C. §2002e-2; <u>Albright v. City of Philadelphia</u>, 399 F. Supp. 2d 575, 587 (E.D. Pa. 2005) ("Lack of overtime opportunities, which provide significant compensation for many police officers, is a form of reduction in compensation."); <u>see</u> <u>also</u> <u>Bass v. Bd. of County Com'rs, Orange County, Fla.</u>, 256 F.3d 1095, 1118 (11th Cir. 2001). A claim for discrimination in overtime requires a plaintiff show that the lack of overtime hours received was motivated by discriminatory animus. *Stewart v. Union County Board of Education*, 655 F. App'x 151, 158 (3d Cir. 2016).

The crux of Plaintiff's overtime claim is that she did not know about the overtime sign-up until she complained and her manager Stashak explained the procedure to her. Again, however, she provides no evidence that there was any discriminatory basis for Plaintiff's lack of knowledge of the procedure—i.e., that men wore told the procedure and women were not or that the sign-up sheet was hidden and placed only where male employees knew where to find it. Likewise, Stashak's response reveals no evidence of discrimination as he promptly showed her the overtime forms and explained their use.

In support of her position that this is sex discrimination, Plaintiff points to three male employees who she claims received more overtime hours than she. Plaintiff also argues, without record evidence, that she had more seniority than male employees Robert Morgan, Dave Flack and Guy Guarino, (Doc. 50 at 9), and therefore, should have received more overtime than they did.

She summarizes overtime hours of three males as follows:

- Robert Morgan received 7 days more overtime from 8/29/10 through 3/23/2011
- Dave Flack received 69 days more overtime from 1/20/08 through 3/23/2011
- Guy Guarino received 12 days more overtime from 10/15/08 through 3/23/2011

(Doc. 48 at ¶ 40). Plaintiff offers that her "summary" gave "consideration"[8] to time she was out on workers' compensation, (Doc. 50 at 10 n. 2), but admits that she did not account for periods during which she was on vacation, id., and thus, would not have worked overtime. It also is unclear whether her summary accounts for the four weeks after her return from workers' compensation leave for which she admittedly would not been able to sign up, (Doc. 50 at 10), or includes weeks when she actually chose to sign up on the required form. As she did not begin using the sign-up sheets until the week ending November 10, 2010, (Doc. No. 50 at 10), the summary regarding time in 2009 and until approximately December 2010 could not represent a comparison of similarly situated individuals. Moreover, any challenge to overtime assignment prior to December 2, 2011 is time-barred as indicated *supra*.

Notably, the record demonstrates that for the week ending December 4, 2010, she had more overtime than her comparator Morgan, that for the week ending December 11, 2010, she had more overtime than comparators Morgan and Flack, and that for the week ending December 18, 2010, she had more overtime than comparators Morgan and Guarino. Additionally, she went out on workers' compensation leave beginning December 23, 2010 and returned on March 3, 2011. (Doc. 50-2 at 21-22). As Plaintiff indicated, she would not have been able to sign up for overtime occurring until four weeks after her return to duty. Thus, for the conceivably relevant weeks within the limitations period as reflected in the documents on which she bases her summary, she had more overtime than her chosen male comparator Morgan. For this reason and for the reasons articulated above, consideration of these records simply cannot create any inference of discrimination in overtime assignment for the relevant period.

---

[8] The Court will presume that by "consideration" Plaintiff means that she eliminated that time from comparison in calculating how much more overtime the three males received.

Thus, Plaintiff cannot provide any evidence to show circumstances giving rise to an inference of discrimination as part of a *prima facie* case of discrimination in overtime nor does she show pretext in the reasons proffered by FedEx—that Plaintiff had not signed up for overtime on the posted form and that overtime was often assigned based on familiarity with particular routes. Plaintiff's claim that she was denied overtime fails both as to the *prima facie* case and as to pretext. Accordingly, the Court will grant summary judgment on the alleged discriminatory overtime claim.

**Sexual Harassment**

In order to prove that she suffered a hostile work environment, Plaintiff must show "that her workplace was 'permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" Peace-Wickham v. Walls, 409 F. App'x 512, 519 (3d Cir. 2010) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (quotations omitted)). "[O]ffhanded comments and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim. Rather, the conduct must be extreme to amount to a change in the terms and conditions of employment." Caver v. City of Trenton, 420 F.3d 243, 262 (3d Cir. 2005) (internal quotations and citations omitted). It is insufficient to show offensive conduct or that the conduct was such that it rendered Plaintiff's worklife unpleasant or uncomfortable. McClendon v. Dougherty, 2011 WL 677481, *8 (W.D. Pa. Feb. 15, 2011). Where there is evidence of epithets or sexist remarks, "[t]he mere utterance of [same] which engenders offensive feelings in an employee, is not sufficiently significant as to effect the conditions of employment and thereby violate Title VII." Id. (citations omitted).

Plaintiff claims that she felt "harassed," that her dispatcher McKay was rude to her, that her complaints were treated dismissively and that she was told at one point to "go away" from behind closed doors. Plaintiff's evidence is woefully inadequate for a reasonable jury to find a hostile work environment based on sex. The anti-discrimination laws, such as Title VII and the PHRA, do not guarantee a utopian workplace or one that is free from strife. Fichter v. AMG Res. Corp., 528 F. App'x 225, 231 (3d Cir. 2013). Faragher v City of Boca Raton, 524 U.S. 775, 788 (1998) (stringent standard is adopted to filter out ordinary tribulations because Title VII is not a civility code); Fichter, 528 F. App'x at 231 (utopian workplace is not the goal of Title VII); Potter, 435 F.3d 451 (citing Faragher, 524 U.S. at 788) (Title VII does not "mandate a happy workplace. Occasional insults, teasing, or episodic instances of ridicule are not enough."); Solomon v. Caritas, No. CV 15-4050, 2016 WL 4493193, at *7 (E.D. Pa. Aug. 26, 2016).

> Rather, Title VII protects an employee from [sex] discrimination in the workplace, which includes freedom from a racially-hostile work environment [or a hostile work environment based on sex]. If the workplace is unpleasant, or even revolting, for any reason other than hostility generated . . . on account of an employee's membership in a protected class under Title VII, then the hostile environment fails to implicate a federal claim. In short, personality conflicts between employees are not the business of the federal courts.

Hoist v. N.J., No. CIV.A. 12-5370 FLW L, 2015 WL 4773275, at *22 (D.N.J. Aug. 13, 2015), aff'd, 642 F. App'x 169 (3d Cir. 2016) (internal quotations omitted).

Mandel instructs:

> To determine whether an environment is hostile, a court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); see also Caver v. City of Trenton, 420 F.3d 243, 262–63 (3d Cir.2005) ("[A] discrimination analysis must concentrate not on individual incidents, but on the overall scenario.").

Mandel v. M&Q Packaging Corp., 706 F.3d 157, 168 (3d Cir. 2013).

Here, considering the totality of the circumstances, at most, Plaintiff can show that certain employees were rude and perhaps dismissive regarding her concerns, but that is insufficient to constitute a hostile work environment based on conduct that is severe and pervasive, much less based on sex.

Moreover, Plaintiff's harassment claim is time barred. The "isolated" instances of rudeness complained of by Plaintiff do not constitute a pattern of related behavior, discriminatory or otherwise to qualify as a continuing violation. Plaintiff also has not offered evidence to show that the acts alleged before and after the claims bar date of December 2, 2010, are or could in anyway be connected, other than that they happened to her. See Stough v. Conductive Technologies, Inc., 613 F. App'x 145, 148 n. 2 (3d Cir. 2015). Accordingly, the Court will grant summary judgment on Plaintiff's claim for harassment as there is insufficient evidence from which a reasonable jury could find severe or pervasive conduct altering her work conditions based on sex and it is untimely.

**Disability Discrimination**

Plaintiff additionally contends that she is disabled due to migraine headaches and that she was discriminated against on the basis of that disability. She claims that because sharing trucks with other drivers could trigger her migraines, due to the potential for cigarette smoke odor, she requested and was denied an accommodation of a personal truck. (ASOF at ¶ 23).

Plaintiff's claims under the ADA are twofold: (1) she claims liability for the failure to reasonably accommodate; and (2) she claims liability for retaliation in response to her request for a reasonable accommodation. FedEx argues that Plaintiff is not disabled within the meaning of the ADA, and thus, it is not liable under the ADA for the asserted failure to provide a reasonable

accommodation. FedEx additionally argues that Plaintiff cannot establish a "causal nexus" between her request for reasonable accommodation and her termination.

"The relevant time for determining whether the plaintiff is a 'qualified individual with a disability' is the time of the adverse employment decision," Rocco v. Gordon Food Serv., 609 F. App'x 96, 98 (3d Cir. 2015), which in this case is March of 2011.[9] Plaintiff argues that she is disabled due to migraine headaches and that under the ADA Amendments Act of 2008 ("ADAAA"), the term "disability" is to be construed broadly, citing Bare v. Federal Exp. Corp., 886 F.Supp.2d 600, 610 (N.D. Oh. 2012). (ECF No. 50 at 15-16); 29 C.F.R. § 1630.2(h) and 29 C.F.R. § 1630.2(j)(1) (defining "physical or mental impairment" and "substantially limited in a major life activity.")

> The ADAAA, 42 U.S.C. § 12102, broadened the definition of disability.
>
> In fact, the ADAAA and was adopted to specifically address certain impairments that were not receiving the protection that Congress intended—cancer, HIV-AIDS, epilepsy, diabetes, multiple sclerosis, amputated and partially amputated limbs, post-traumatic stress disorder, intellectual and developmental disabilities— not minor, transitory impairments, except if of such a severe nature that one could not avoid considering them disabilities. Although Congress sought to abrogate the "significantly or severely restricting" requirement as it pertained to the "substantially limits" factor of the ADA, the ADAAA still requires that the qualifying impairment create and "important' limitation. Therefore, even under the relaxed ADAAA standards, a plaintiff is still required to plead a substantially limiting impairment.

Koller v. Riley Riper Hollin & Colagreco, 850 F.Supp.2d 502, 513 (E.D. Pa. 2012) (internal citations and quotations omitted).

FedEx argues that Plaintiff's migraines do not qualify as a disability. In support, it points to evidence that at the time of her termination and her request for reasonable accommodation,

---

[9] Plaintiff does not argue that she is disabled under "the record of" or "regard as" prongs. See Rocco, 609 F. App'x at 98.

she had only one migraine a week and that her migraines did not cause her to miss work (indeed she was complaining about not enough overtime), and she was able to engage in normal daily activities, such as bike riding, walking and shopping. In response, Plaintiff points to her history of migraines, that although they were under control in 2006 with medication, that she had suffered a head injury in 2010 that caused her migraines to return and worsen and that the smoke in the truck she drove at work on March 23, 2011, triggered a migraine that then caused her "escalated behavior" later that evening. (Doc. No. 50 at 15). She adds in her brief that her "overall enjoyment of life has been diminished and while her physical activities which included riding a bike and going to the gym have not totally stopped, they have been greatly reduced. The migraines have also led her to develop a much more simplistic and solitary lifestyle." (Doc. 50 at 16). Plaintiff provides no citation to record evidence to support this assertion and a review of her deposition reveals that Plaintiff's testimony on the matter referred to her condition at the time of her deposition in 2015, as opposed to the time of the alleged discrimination -- March 2011. (Doc. 38 at 8-9).

Plaintiff also now claims that her third warning letter from FedEx resulted from the fact that her migraines had somehow caused her behavior, and that should have excused her conduct.

> The ADA, however, does not require that an employer excuse an employee's previous misconduct, even if it was precipitated by his or her disability. See Davila v. Qwest Corp., 113 Fed.Appx. 849, 854 (10th Cir.2004) ("[A]s many cases have recognized in various contexts, excusing workplace misconduct to provide a fresh start/second chance to an employee whose disability could be offered as an after-the-fact excuse is not a required accommodation under the ADA."); Palmer v. Circuit Court of Cook Cnty., Ill., 117 F.3d 351, 352 (7th Cir.1997) ("[I]f an employer fires an employee because of the employee's unacceptable behavior, the fact that that behavior was precipitated by a mental illness does not present an issue under the Americans with Disabilities Act."); Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 90 (1st Cir.2012) ("When an employee requests an accommodation for the first time only after it becomes clear that an adverse employment action is imminent, such a request can be too little, too late.") (internal quotation marks omitted); Heard v. St. Luke's Hosp., No. 08–

cv–5494, 2009 WL 3081513, at *5 (E.D.Pa. Sept. 28, 2009) ("[A]n employer is not obligated to accommodate an employee whom it has decided to discharge for misconduct, even if the employee subsequently cites some medical condition or disability as the supposed cause of the prior misconduct triggering the discharge.")

Willis v. Norristown Area Sch. Dist., 2 F. Supp. 3d 597, 607–08 (E.D. Pa. 2014).

The Court finds that Plaintiff has failed to adduce sufficient evidence from which a reasonable jury could find that she is an individual with a "disability." See Namako v. Acme Markets, Inc., No. 08-3255, 2010 WL 891144, at *5 (E.D. Pa. 2010) (applying ADAAA and determining that the plaintiff was not disabled due to high blood pressure, related migraines and emotional and family stress).  Additionally, as to the asserted failure to reasonably accommodate, because Plaintiff was terminated and has failed to show discrimination in her termination, the failure to provide her with a dedicated truck based on her March 24, 2011, request is irrelevant as she no longer worked for FedEx.  Accordingly, the Court will grant summary judgment on Palmer's claim for failure to reasonably accommodate.  The Court now turns to her claims for retaliation.

**Retaliation**

A *prima facie* case of retaliation requires a plaintiff to show that: (1) she engaged in a protected activity, (2) the employer subjected her to an adverse employment action, and (3) "a causal link exists between the protected activity and the adverse action."  Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir.2001).  Once the plaintiff establishes a *prima facie* case of retaliation:

> [The] burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action." If the employer satisfies that burden, the plaintiff must then prove that "retaliatory animus played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process.

Shellenberger v. Summit Bancorp., Inc._, 318 F.3d 183, 187 (3d Cir.2003) (citing McDonnell Douglas_, 411 U.S. 792).  Both an internal complaint of discrimination, see Bailey v. Commerce Nat. Ins. Services, Inc._, 267 F. App'x 167, 170 (3d Cir. 2008), a request for reasonable accommodation, Shellenberger_, 318 F.3d 183 at 191, are considered protected activity.

As to retaliation, Plaintiff claims that she was terminated in retaliation on March 31, 2011 because: (1) she filed a written complaint four and one-half months earlier on November 15, 2010, against male managers contending she was subjected to harassment based on gender; and (2) she gave her manager a written request for a non-smoking truck dedicated to her use.  (Doc. No. 50 at 5).  Plaintiff also appears to contend that she was terminated because, on March 23, 2011, she left a note for Peluso asking why she was not getting overtime when less senior males were.  (PSOF at ¶ 42).

Moreover, Plaintiff argues that the investigation into her complaint regarding the November 9, 2010 incident was inadequate because when it was investigated the memories of those involved were "foggy," and none of the males received any discipline or an OLCC. (Doc. No. 50 at 7).  Plaintiff admits that the person conducting the investigation believed that the statement "go away" made from behind closed doors was meant as a joke.  (Doc. No. 50 a 7). The statement itself does not impart any discriminatory animus and the timing between her complaint regarding the comment "go away" on November 9, 2010, and her termination over four months later is not suggestive of any causation.  See Williams v. Philadelphia Housing Authority Police Dept._, 380 F.3d 751, 759–60 (3d Cir.2004) (two month lapse between request for accommodation and discharge was not, on its own, unusually suggestive of retaliatory motive); Kieffer v. CPR Thomas-Taylor v. City of Pittsburgh_, 2014 WL 4079944, at * 8-9 (W.D. Pa. Aug. 18, 2014).

> Absent temporal proximity, circumstantial evidence of a "pattern of antagonism" following the protected conduct can also give rise to the inference. Temporal proximity and a pattern of antagonism are not the only means to prove causation; the proffered evidence as a whole may be sufficient to raise an inference of intent.

Thomas-Taylor v. City of Pittsburgh, No. CIV.A. 13-164, 2014 WL 4079944, at *8 (W.D. Pa. Aug. 18, 2014) (internal quotations and citations omitted), aff'd, 605 F. App'x 95 (3d Cir. 2015).

There is nothing in this record whatsoever to connect the November 15, 2010 "internal" complaint regarding the November 9, 2010 statement "go away," the note regarding overtime, or the request for a dedicated truck with the decision to terminate her. Moreover, nothing in the record suggests that her termination was due to retaliatory animus. Plaintiff has no evidence of "antagonism" following the November 15, 2010 internal complaint. The timing between the March 23, 2011 note regarding overtime or the March 24, 2011 request for a dedicated truck and her March 31, 2011 termination was close, but given her admitted conduct in calling her co-worker a "nebsh*t" on March 23, 2011, under the circumstances of this case, is not unusually suggestive of a causal link. Moreover, Plaintiff cannot show pretext.

In sum, Plaintiff's retaliation claim fails because she has no evidence to connect the protected activity to her termination or otherwise show retaliatory animus in that decision.

**Claims under the PHRA**

The same standards applied for discrimination claims under Title VII and the ADA apply to the PHRA. Castellani v. Bucks Cty. Municipality, 351 F. App'x 774, 777 (3d Cir. 2009) (ADA and PHRA); Harris v. SmithKline Beecham, 27 F.Supp.2d 569, 576 (E.D. Pa. 1998). Thus, the Court will likewise grant summary judgment on the PHRA claims for the reasons discussed above.

## II. **ORDER**

Defendant's Motion for Summary Judgment (Doc. 39) on all claims against it is

GRANTED.

IT IS SO ORDERED.


December 30, 2016                                         s/Cathy Bissoon
                                                        Cathy Bissoon
                                                        United States District Judge

cc (via ECF email notification):

All Counsel of Record